# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# TEXAS DALLAS DIVISION

| | |
|---|---|
| DAPHNEY JENNINGS AND DEANDRE JENNINGS, § § § Plaintiffs, § § v. § § GREGORY WAYNE ABBOTT, in § his Official Capacity as Governor § of Texas, et al., § § Defendants. § § § | Civil Action No. 3:20-cv-00583-E |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Before the Court is defendant Amber Davidson's Motion to Dismiss Plaintiffs' Original Complaint (Doc. 6). Plaintiffs Daphney Jennings and Deandre Jennings did not respond to the motion. Having considered the motion, Davidson's briefing, and applicable law, the Court finds that motion should be granted for the reasons below.

### BACKGROUND

The following is taken from plaintiffs' Original Complaint (Doc. 1). On or about February 26, 2018, Davidson, an agent of the Texas Department of Family and Protective Services (DFPS), executed an affidavit in support of a petition for the protection of Daphney in state district court.[2] The following day, the state court entered an Order for Protection of a Child in an Emergency and Notice of Hearing and an Order for Issuance of a Writ of Attachment, along with the Writ of Attachment, commanding law enforcement to take custody of Daphney.

---

[1] This Amendment to the Court's Memorandum Opinion and Order (Doc. 10), entered on December 31, 2020, properly reflects that the dismissal of plaintiffs' claims against defendant Amber Davidson in her official capacity is without prejudice for lack of subject matter jurisdiction.

[2] Cause No. 85768, in the 354th Judicial District Court of Hunt County, Texas.

Daphne, who was 16-years-old and six-months pregnant, was placed into foster care. A week later, Daphney and Deandre, her boyfriend and the father of her child, married in Oklahoma. Daphney was returned to foster care on or about March 6, 2018 and, on March 9, 2018, DFPS filed a petition to annul the marriage or, alternatively, to declare it void.[3] The court proceedings ultimately were dismissed and plaintiffs' marriage was found to be valid.

According to the petition, Davidson, as caseworker, was responsible for, "among other things, conducting an investigation in accordance with the laws, procedure, and standard established by DFPS, [the Texas Health and Human Services Commission (HHSC)], and the State of Texas." Further, "the court proceedings were prosecuted or the prosecution of [sic] was supported due to the actions or inactions" of Davidson.

Davidson attached to her motion to dismiss various documents from the state court proceedings (Doc. 6-1). The documents reflect that DFPS learned in late February 2018 that Daphney was pregnant and living with her father in violation of DFPS's prior resolution of a 2016 investigation, which provided for her placement outside the home with a guardian (*Id*. at 22-23, 25). Davidson investigated the 2018 allegations, and DFPS petitioned for emergency custody of Daphney (*Id*. at 2-29). The state court found "continuation in the home of [her mother] or [father] would be contrary to [her] welfare" (*Id*. at 30). Finding no time for a full adversary hearing and "reasonable efforts consistent with the circumstances and providing for the safety of [Daphney] were made to prevent or eliminate the need" for her removal, the court named DFPS her temporary sole managing conservator until a full adversary hearing could be held on March 9, 2018 (*Id*. at 31, 34, 45-46). DFPS employees, including Davison, and law enforcement officials took custody of Daphney at her school. (*Id.* at 40-42, 45-46).

---

[3] Cause No. 85830, in the 354th Judicial District Court of Hunt County, Texas.

Shortly thereafter, Daphney left DFPS custody and was reported as a runaway with local law enforcement (Doc. 6-1 at 44). On March 5, 2018, with the assistance of Daphney's father,[4] plaintiffs traveled to Oklahoma to marry (*Id*. at 42). The same day, the Court Clerk of Choctaw County, Oklahoma, issued plaintiffs a marriage license and a pastor married them (*Id*. at 48). Daphney's father served as a witness (*Id*.). As temporary sole managing conservator, DFPS sought to annul or void the marriage on the grounds that it was performed without a court order as required by law (*Id*. at 46-47). On May 16, 2018, the state court entered an Agreed Order, which included, among other things, a finding that the marriage was valid and provisions enjoining Daphney's father from unsupervised access to Daphney, and any children of Daphney, until they turned 18 (*Id*. at 40-42).

Plaintiffs assert claims against Davidson, both individually and as a DFPS agent, and other defendants[5] for false imprisonment and interference with the right of familial association under color of state law under 42 U.S.C. § 1983. They also assert state law claims for intentional infliction of emotional distress and false imprisonment. Plaintiffs complain that they were separated, and Daphney remained in foster care and DFPS custody, while defendants failed or refused to recognize plaintiffs' marriage and litigated for its annulment. Davidson moves to dismiss all of plaintiffs' claims against her.

## LEGAL STANDARDS

A district court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss.*

---

[4] Daphney's father subsequently was convicted on a charge of interfering with child custody for secreting Daphney after she escaped DFPS custody (Doc. 6-1 at 40-42).

[5] Plaintiffs also have sued Rhonda West, another DFPS caseworker, Amanda Haines, a DFPS supervisor, Governor Greg Abbott, Attorney General Kenneth Paxton, Jr., HHSC Executive Commissioner Courtney A. Phillips, and DFPS Commissioner Jamie Masters.

*Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

**ANALYSIS**

*1. Standing*

Davidson first contends plaintiffs lack standing to pursue this action against her. Specifically, Davidson asserts there is an absence of allegations that she engaged in any conduct that violated the law. Further, "it is clear that the plaintiffs' alleged injuries were caused by the state court's orders and writ of attachment," and plaintiffs did not allege that either were unlawful.

The Court has no subject-matter jurisdiction over a case when a plaintiff lacks Article III standing. *Crane v. Johnson*, 783 F.3d 244, 251, 255 (5th Cir. 2015). A party invoking federal jurisdiction bears the burden of proof to establish standing, which consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent"; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood the plaintiff's injury will be redressed by a favorable judicial decision. *Id*. at 251–52. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61(1992) (internal quotations marks and citation omitted).

Here, plaintiffs have sufficiently stated a concrete and particularized injury by alleging that they were separated and Daphney remained in foster care for a time following their marriage in violation of their constitutional rights and Texas law. Second, plaintiffs allege the injury is attributable to Davidson's conduct in investigating and "supporting" the court proceedings. Therefore, there is some causal connection alleged between the complained-of conduct and the

injury. Third, plaintiffs seek redress through payment of monetary damages pursuant to 42 U.S.C. § 1983 and Texas law.

To be sure, the factual support for plaintiffs' claims against Davidson is, at best, scant. The Court, however, finds that Davidson's argument is better suited to a Rule 12(b)(6) motion. *See, e.g., Foley v. Texas Dep't of Family & Protective Servs.*, No. 1:12-CV-270, 2012 WL 6803598, at *5–6 (E.D. Tex. Nov. 14, 2012), *report & recommendation adopted*, 2013 WL 84852 (E.D. Tex. Jan. 7, 2013). Accordingly, the Court finds plaintiffs have standing to seek damages relief, if such relief is actually available and provable in fact.

2. *Eleventh Amendment Immunity*

Davidson next asserts that plaintiffs' claims against her in her official capacity are barred by the Eleventh Amendment. Unless immunity is waived by Congress or a state, the Eleventh Amendment bars suit in federal court by a private citizen against a state agency or a state actor in her official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … [and] no different from a suit against the State itself").

The State of Texas has not waived its sovereign immunity from section 1983 claims. Nor has Congress abrogated sovereign immunity from section 1983 claims. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Although *the Ex Parte Young* doctrine allows a state official to be sued in her official capacity for prospective, injunctive or declaratory relief under section 1983, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908), the doctrine does not apply here where plaintiffs' section 1983 claims against Davidson seek only monetary damages. *NiGen Biotech*, 804 F.3d at 394. Accordingly, the Eleventh Amendment bars

6

plaintiffs' section 1983 claims against Davidson in her official capacity. *See, e.g., Thomas v. Tex. Dep't of Family & Protective Servs.*, 427 F. App'x 309, 312–13 (5th Cir. 2011) (per curiam) (affirming dismissal due to sovereign immunity of section 1983 action against DFPS and DFPS employees in their official capacity).

Nor has Texas waived Eleventh Amendment sovereign immunity for state tort claims in federal court. *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996). Even had plaintiffs brought their state tort claims against Davidson in state court, the claims would require dismissal. Although the Texas Tort Claims Act (TTCA) expressly waives sovereign immunity under certain circumstances,[6] none of those circumstances are present in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025. And, the waiver of sovereign immunity does not apply to claims arising out of intentional torts. *Id.* § 101.057; *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993). Plaintiffs' state law claims for false imprisonment and intentional infliction of emotional distress against Davidson in her official capacity are intentional tort claims that do not fall within any of the TTCA's express waivers of sovereign immunity. Accordingly, those claims also are barred by the Eleventh Amendment and must be dismissed.

*3. TTCA Bars Plaintiffs' State Law Tort Claims*

Davidson contends she is entitled to dismissal of plaintiffs' state tort claims against her in her individual capacity pursuant to section 101.106(f) of the TTCA. *See* CIV. PRAC. & REM. § 101.006(f). Section 101.106(f), an election of remedies provision, provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the

---

[6] Specifically, the TTCA expressly waives sovereign immunity in the instance of: (1) injury resulting from the operation of a publicly-owned automobile by the employee; (2) injury arising out of a condition or use of tangible personal property; or (3) injury arising from a premises defect. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025).

employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

CIV. PRAC. & REM. § 101.006(f). Thus, a defendant is entitled to dismissal under section 101.106(f) if the plaintiff's claim (1) is based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the TTCA. *Garza v. Harrison*, 574 S.W.3d 389, 399–400 (Tex. 2019). The TTCA strongly favors dismissal of suits against government employees. *Id*.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by a competent authority." CIV. PRAC. & REM. § 101.001(5). Even wrongful or negligently performed conduct may be within an employee's scope of employment as long as the conduct was "related to the performance of [the employee's] job." *Hopkins v. Strickland*, No. 01-12-000315-CV, 2013 WL 1183302, at *3 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.); *see Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017).

Here, plaintiffs allege Davidson, a DFPS caseworker, was "acting under the color of the law of the State of Texas" and appear to complain about Davidson's investigation "in accordance with the laws, procedures, and standards established by DFPS, HHSC, and the state of Texas." Accordingly, accepting the complaint's allegations and viewing them in the light most favorable plaintiffs, the Court finds the state law claims are based on conduct by Davidson that is within the general scope of her employment and, thus, satisfy the first element for application of section 101.106(f).

As to the second element, the Texas Supreme Court has held that "all [common-law] tort theories alleged against a governmental unit ... are assumed to be 'under [the Tort Claims Act]' for the purposes of section 101.106." *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011) (brackets in original) (citing *Mission Consol. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). Therefore, the Court finds the state tort claims against Davidson are claims that could have been brought against DFPS in this case. *See id*. at 369, 381. Both elements required for section 101.106(f) to apply being satisfied, statutory immunity applies and the Court must dismiss the state tort claims asserted against Davidson in her individual capacity.

*4. Rooker-Feldman*

Davidson next assert that, because plaintiffs' lawsuit appears to arise out of their dissatisfaction with the state court orders and proceedings, the finality of those proceedings triggers application of the *Rooker-Feldman* doctrine, requiring dismissal of plaintiffs' claims. "Absent specific law otherwise providing, [the *Rooker–Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994). But the doctrine is "narrow" and only applies when the plaintiff seeks the "review and rejection" of a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). It does not bar a federal lawsuit simply because it challenges a state court's legal conclusions. *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 383–84 (5th Cir. 2013). Thus, a federal suit is not barred if the alleged injuries were caused by a defendant's actions rather than by the state court judgment, even if the defendant's actions led to the state court judgment. *Id.* at 382–84.

Although their allegations are exceedingly general, the Court finds plaintiffs do not seek a review or rejection of the state court's orders and challenge, among other things, conduct by

Davidson before entry of the orders. Accordingly, the Court finds the claims are not barred by the *Rooker–Feldman* doctrine. *See id.*; *e.g., Saloom v. Texas Dep't of Family & Child Protective Servs.*, 578 F. App'x 426, 428–29 (5th Cir. 2014).

*5. Qualified Immunity*

Finally, Davidson asserts that, even if the Court has subject matter jurisdiction over plaintiffs' section 1983 claims against her, she is entitled to qualified immunity. Qualified immunity is a defense available to government officials sued for constitutional violations pursuant to 42 U.S.C. § 1983. *See Glenn v. City of Tyler*, 242 F.3d 307, 317 (5th Cir. 2001). It shields officials from liability for civil damages so long as their conduct does not violate clearly established rights. *Id.*; *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate the defense's inapplicability. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The plaintiff must allege sufficient facts to show (1) the defendant violated a federal statutory or constitutional right, and (2) the unlawfulness of the defendant's conduct was clearly established at the time. *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019). The plaintiff must show the defendant's "conduct was unreasonable in light of clearly established rule of law." *Id.* (citation omitted). A defendant's conduct is "'objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 285 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

If a plaintiff does not state a claim that a defendant violated clearly established law, then "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted); *see also Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019).

Plaintiffs first allege Daphney's Fourth Amendment right to be free from unreasonable search and seizure was violated when defendants "failed or refused to recognize the marital union between [p]laintiffs, and perpetuated litigation by petitioning for the annulment" of the marriage. The Fourth Amendment protects individuals from unreasonable searches and seizures, U.S. CONST. AMEND. IV, and applies to social workers' civil investigations. See *Roe v. Texas Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002). "The government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances." *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 429 (5th Cir. 2009). Daphney, however, was placed in DFPS custody pursuant to a state court order. And, plaintiffs allege no facts to show any particular act or inaction by Davidson with respect to the placement was unconstitutional, or unlawful, in any way.[7] Nor do plaintiffs allege facts to show that Davidson's conduct was anything other than objectively reasonable under clearly established law. To the contrary, it seems only reasonable that DFPS, as Daphney's court-ordered temporary sole managing conservator, would take steps to determine and/or challenge the validity of her marriage, entered into without DFPS knowledge or permission and, while doing so, return Daphney to her placement. Because plaintiffs fail to satisfy their burden to show otherwise, Davidson is shielded by the defense of qualified immunity with respect to plaintiffs' Fourth Amendment claim against her.

---

[7] For example, a social worker violates the Fourth Amendment by "knowingly and intentionally, or with reckless disregard for the truth" mak[ing] a false statement or omission that results in the issuance of a court order removing a child from her home without adequate grounds. *Wernecke v. Garcia*, 452 F. App'x 479, 483 (5th Cir. 2011).

11

Plaintiffs also contend Davidson's conduct resulted in their physical separation and, thus, interfered with their rights of familial association. There is a due process right to family integrity protected by the Fourteenth Amendment. *Morris v. Dearborne*, 181 F.3d 657, 667 (5th Cir. 1999). There also is a First Amendment constitutional right of free association in the context of "certain intimate human relationships." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984); *see also Day v. Seiler*, 560 F. App'x 316, 320 (5th Cir. 2014).

The "right of the family to remain together without the coercive interference of the awesome power of the state" is strong, but the state also has a strong interest in preventing child abuse. *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988) (quoting *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977)). Accordingly, "[t]he right to family integrity must be balanced against the state's interests in protecting the health, safety, and welfare of children." *Wooley v. Baton Rouge*, 211 F.3d 913, 924 (5th Cir. 2000). To analyze whether a claim alleges a clearly established violation of the right to familial integrity, a court must place "[the claim], on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *Romero v. Brown*, 937 F.3d 514, 520 (5th Cir. 2019) (quoting *Morris*, 181 F.3d at 671). If the state's and family's interests overlap, the facts of the case "place it in the center of the continuum," and "the right to family integrity is considered too 'nebulous' to find a clearly established violation." *Id.* "If, on the other hand, the case is squarely on the end of the continuum where the state's interest is negligible and where the family privacy right is well developed in jurisprudence from this circuit and the Supreme Court, qualified immunity is not a defense." *Id.* (internal quotation marks and citation omitted).

The Fifth Circuit has yet to find a clearly established violation of the right to family integrity in any case against a child welfare worker. *Id.* (citing *Kiser v. Garrett*, 67 F.3d 1166,

1173 (5th Cir. 1995); *Hodorowski*, 844 F.2d at 1217 (both rejecting social worker liability arising from temporary removal of children during an ongoing investigation). Instead, "[t]he Fifth Circuit has repeatedly observed that social workers, whose job requires them to investigate, judge, and often take action antagonistic to the parent-child relationship, operate at the nebulous frontier of the right to family integrity." *Hall v. Dixon*, No. H 09-2611, 2010 WL 3909515, at *23 (S.D. Tex. Spt. 30, 2010), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012). A court must decide whether the family integrity right at issue is "defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *McClendon*, 305 F.3d at 331; *Ruiz v. Texas Dep't of Protective & Regulatory Servs.*, 984 F. Supp.2d 657, 674 (S.D. Tex. 2013).

With respect to Davidson, plaintiffs allege only that, as a caseworker, she was responsible for, "among other things, conducting an investigation in accordance with the laws, procedure, and standard established by DFPS, HHSC, and the State of Texas" and her "actions or inactions" supported the court proceedings. To the extent that plaintiffs' one-day marriage gave rise to a right to family integrity, DFPS, as Daphney's temporary sole managing conservator, did not consent to the marriage and the marriage's validity was a matter of genuine dispute. Under the circumstances, Daphney's return to DFPS custody following the marriage, again in compliance with a court order, was reasonable. Plaintiffs do not provide, and this Court has not found, any authority to show Davidson should have acted otherwise or that her actions did not fall squarely in the middle of the continuum between the state's clear interest in protecting children and a family's clear interest in privacy. Accordingly, the Court finds plaintiffs fail to satisfy their burden to show Davidson violated a clearly established Fourteenth Amendment due process rights to family integrity. Likewise, plaintiffs do not show, and the Court has found no authority

to support a finding that, Davidson violated a clearly established First Amendment right to familial association under these circumstances. As a result, the qualified immunity defense applies as to plaintiffs' section 1983 claim against Davidson for violation of family association rights, and the claim must be dismissed.

### CONCLUSION

For the reasons stated above, Davidson's Motion to Dismiss Plaintiffs' Original Complaint (Doc. 6) is **GRANTED**. Plaintiffs' claims against Davidson in her official capacity are **DISMISSED without prejudice** for lack of jurisdiction. Plaintiffs' claims against Davidson in her individual capacity are **DISMISSED with prejudice**.[8]

**SO ORDERED**; signed May 11, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[8] A district court has discretion whether to dismiss a claim with or without prejudice, *see Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009), and the court may deny an opportunity to replead if an amendment of a claim is futile. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). Additionally, plaintiffs have not requested leave to amend any of its claims against Davidson in response to her motion to dismiss. Accordingly, the Court finds these claims against Davidson should be dismissed with prejudice.